UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| GKS CORPORATION | ) | Chapter 11 |
| | ) | Case No. 19-30998-EDK |
| Debtor | ) | |
| _____ | ) | |

### UNITED STATES TRUSTEE'S MOTION FOR THE ENTRY OF AN ORDER DIRECTING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE

William K. Harrington, the United States Trustee for Region One, hereby files this Motion for the Entry of an Order Directing the Appointment of a Chapter 11 Trustee under 11 U.S.C. §§ 1104(a)(1) and (a)(2) for GKS Corporation ("Debtor"). The United States Trustee asserts that "cause" exists for the appointment of a Chapter 11 Trustee and/or that the appointment is in the best interests of creditors and other interests of the estate. In support of this motion, United States Trustee states as follows:

Preliminary Statement

As set forth in more detail below, "cause" exists for the appointment of a Chapter 11 trustee because of the fraud, dishonesty, incompetence, or gross-mismanagement of the Debtor by its prepetition officers and directors ("Pre-Petition Management"), and because of the incapability of Pre-Petition Management to manage the Debtor post-petition.

The Debtor is the owner of The American Inn for Retirement Living (the "Inn"), located in Southwick, Massachusetts. The American Inn is a senior living facility consisting of a main building (containing both independent living and assisted apartments, as well as dining and recreational facilities) and 129 free standing, independent living cottages. The Inn has been operated as an entrance fee facility, whereby seniors pay up-front fees ranging from,

1

approximately, $140,000 to $250,000 for a residential unit. Upon leaving their residential units, pursuant to executed agreements with the Debtor, seniors are to receive a refund of 70-90% of their entrance fee. Residents also pay monthly fees.

Debtor's Prepetition Management consists of two shareholders—Michael B. Guarco ("Guarco") and Dorina Guarco Konopka ("Konopka")—who also serve as the directors and officers of the Debtor.[1] In recent years, with Guarco at the helm, the Debtor's finances deteriorated, and the Debtor failed to meet its obligations to refund entrance fees. The Inn's physical plant deteriorated as well, as the Debtor failed to perform necessary maintenance. During this period, Guarco transferred over one million dollars from the Debtor to another entity owned by Guarco.

The Debtor's secured lender lost confidence in Pre-Petition Management, and the Debtor engaged OnePoint Partners, LLC ("one point") as a financial advisor to assist the Debtor in restructuring its operations and finances. Thereafter, on August 9, 2019, the Debtor and OnePoint entered into Management and Financial Advisory Services Agreement (the "Agreement")[2], under which OnePoint's duties and authority were greatly expanded. The Agreement provides that, in the event the Debtor files a voluntary bankruptcy petition, OnePoint's principal, Toby Shea, shall be appointed Chief Restructuring Officer of the Debtor, "with full authority over the management of [the Debtor's] operations and finances and the conduct of the Voluntary Bankruptcy . . . ." [Agreement, ¶ 4.2.2]

The Debtor filed a voluntary petition for relief with deficiencies under chapter 11 of the Bankruptcy Code on December 26, 2019. On even date, the Debtor filed the CRO Motion, seeking installment of Toby Shea ("Shea") as Chief Restructuring Officer, and to secure the continued engagement of OnePoint's Rob Fallon ("Fallon") as Executive Director, and Jamie Spencer who assists Shea and Fallon o develop and prepare financial reports. The Debtor

---

[1] Guarco and Konopka are brother and sister. Guarco is Debtor's President, Treasurer, Secretary, and a director. Konopka is a director.

[2] The Agreement is filed with the Court as Exhibit B to Debtor's Motion for Authority to Engage OnePoint Partners, LLC to Provide a Chief Restructuring Officer and Additional Personnel for the Debtor Pursuant to Prepetition Agreement (the "CRO Motion")[Doc. # 7].

grounds the CRO Motion, in part, on Pre-Petition Management's incompetence.[3] Although the Debtor states that Pre-Petition Management will maintain "overall management control of the Debtor's activities," [CRO Motion at ¶ 8], this is a hollow statement belied by the terms of the Agreement, which vests full and sole authority over all essential aspects of the Debtor's operations.

Congress provided no other way to replace a debtor's management's control of the case with an independent fiduciary other than appointment of a trustee pursuant to 11 U.S. C. § 1104(a). In seeking to appoint a Chief Restructuring Officer, the Debtor has admitted that the members of Pre-Petition Management are not appropriate fiduciaries for the estate in this Bankruptcy case due to their pre-petition conduct and incompetence. Under such circumstances the Bankruptcy Code requires that an independent chapter 11 trustee, and not a handpicked CRO, be appointed to oversee the Debtor's affairs.

### Jurisdiction, Venue and Legal Basis for Relief

1. The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. 157(b)(2)(A).

2. Venue is proper in this court under 28 U.S.C. §§ 1408 and 1409. The legal basis for relief includes 28 U.S.C. § 586(a)(3) and 11 U.S.C. § 1104(a).

### Facts

3. The Debtor filed a voluntary petition for relief with deficiencies under chapter 11 of the Bankruptcy Code on December 26, 2019.

---

[3] Debtor states, in paragraph 8 of the CRO Motion, that "[t]he Debtor's two shareholders and directors (Michael B. Guarco and Dorina Guarco Konopka) . . . lack the experience and expertise to address efficiently the financial and operational challenges facing the Debtor."

3

4.  The Debtor owns a retirement community consisting of 129 independent living cottages and a main building with both independent living and assisted living apartments. The Debtor operated on the "entrance fee" business model, where residents pay an up-front entrance fee for residency in a cottage or apartment. When residents cease their residency, they receive a refund of 70 – 90% of the entrance fee. The Debtor schedules in excess of $9,000,000 in unsecured debt owed to former residents and $19,000,000 of contingent claims owed to current residents. The Debtor's Chapter 11 restructuring strategy involves converting and marketing the cottages as condominiums, and converting the main building to a rental apartment building without an assisted living component. The Debtor states this strategy has the support of its senior secured creditor, Westfield Bank, whose pre-petition debt is scheduled as $2,273,417.

5.  Under the August 9, 2019 Agreement, which greatly expanded OnePoint's duties and authority, OnePoint shall have:[4]

   a. Sole and exclusive authority over recruitment and hiring of all personnel;
   b. Sole authority over the supervision, training, discipline, promotion and termination of all employees;
   c. Authority to retain outside consultants at Debtor's expense for preparation of audits and other cost reports;
   d. Exclusive control over Debtor's bank accounts;
   e. Exclusive control over all efforts to sell the retirement community, including working with all investment bankers or brokers.

6.  The Agreement further provides that:
   a. Debtor shall pay OnePoint a monthly fee of $50,000;
   b. New Bank accounts will be opened at Westfield Bank, and Pre-petition Management won't have signing authority over accounts;
   c. Existing credit card accounts will be closed, and new credit cards will be opened at Westfield Bank. Pre-petition Management will not have use of new credit card accounts

---

[4] This is a non-exhaustive list of OnePoint's of duties and authority under the Agreement.

4

    d.  Financial decisions will be under the exclusive control of OnePoint; and

    e.  No affiliates or family members of Pre-Petition Management shall be permitted to perform work at the retirement community without the prior consent of OnePoint.

### Argument

7.    Section 1104(a)(1) mandates that the Court appoint an independent chapter 11 trustee upon a sufficient showing of "cause," including fraud, dishonesty, incompetence or gross mismanagement of the affairs of the debtor by its current management, either before or after the commencement of the case, or similar cause. *In re Eichorn*, 5 B.R. 755, 757 (Bankr. D. Mass. 1980). A movant must establish "cause" by a preponderance of the evidence. *Tradex Corp. v. Morse*, 339 B.R. 823, 829-30 (D. Mass. 2006).

8.    Section 1104(a)(2) similarly mandates the appointment of a chapter 11 trustee if doing so is in the best interests of the creditors.

9.    Sufficient grounds exist to appoint a chapter 11 trustee in this case under Section 1104(a)(1) and (2). Cause exists for the appointment of a Chapter 11 trustee due to the gross mismanagement and incompetence of Pre-petition Management in presiding over the financial and physical deterioration of the Inn, diverting funds to an entity owned by Guarco, and by relinquishing its authority to OnePoint.

### A. Gross Mismanagement

10.    Section 1104(a)(1) addresses management's pre and post-petition misdeeds or mismanagement, while subsections (a)(2) provides the Court with "particularly wide discretion" to appoint a trustee event absent wrongdoing or mismanagement. *In re Bellevue Place Associates*, 171 B.B. 615, 623 (N.D. Ill. 1994). Where the Court finds either that cause exist <u>or</u> that appointment is in the interest of creditors, an order for the appointment of a trustee is mandatory. *Official Comm. Of Asbestos Pers. Injury Claimants v. Sealed Air Corp. (In re W.R. Grace & Co.),* 285 B.R. 148, 158 (Bankr. D. Del. 2002).

5

11.     The categories enumerated in subsection (1) of the Bankruptcy Code section 1104(a) "cover a wide range of conduct" and, thus, are best described as exemplary, rather than exclusive. *See In re Marvel Entertainment Corp.,* 140 F.3d 463, 472 (3d Cir. 1998)(quoting *Committee of Dalkon Shield Claimants v. A.H. Robbins Co.,* 828 F.2d at 242). Fraud, dishonesty, incompetence, and gross mismanagement of a debtor's business affairs are all grounds for appointment of a chapter 11 trustee under 11 U.S.C. § 1104(a)(1). *See, e.g., In re Sharon Steel Corp.,* 871 F.2d 1217 (3d Cor. 1989); *In re Colby Constr. Corp.,* 51 B.R. 113, 116-18 (Bankr. S.D.N.Y 1985). The determination of whether cause exists must be taken on case by case basis, taking into account all relevant factors. *Sharon Steel*, 871 F.2d at 1225. In making that determination, courts should be cognizant of the fact that "section 1104 represents a protection that the Court should not lightly disregard or encumber with overly protective attitudes towards debtors-in-possession." *In re v. Savino Oil & Heating Co., Inc.* 99 B.R. 518, 525 (Bankr. E.D.N.Y 1989).

12.     The Debtor's and Pre-petition Management's failure to refund entrance fees to departing residents, failure to adequately maintain the physical plant, diversion of monies to an entity owned by Guarco, and the alleged—by Debtor itself, in its CRO motion—incompetence of Pre-petition Management to conduct the affairs of the Debtor constitute cause for the appointment of a chapter 11 trustee.

13.     If the conduct of the pre-petition governing body and management of a debtor warrants the selection of an independent person to act as the estate fiduciary, as this case does, that person should be selected pursuant to, and subject to, all requirements of the Bankruptcy Coe governing the selection and duties of a chapter 11 trustee.

B. <u>Appointment of a Chapter 11 Trustee is in the Interests of Creditors</u>

14.     Section 1104(a)(2) provides an additional basis for the appointment of a Chapter 11 trustee. Courts have construed subsection (a)(2) to provide for a "flexible standard" and have "allow[ed] the appointment of a trustee even when no cause exists." *See e.g. In re Sharon*

6

*Steel Corp.,* 871 F.2d at 1226. *See also, In re Ionosphere Clubs, Inc.,* 113 B.R. 164 (Bankr. S.D.N.Y. 1990). Subsection (a)(2) emphasizes the court's discretion allowing it to appoint a trustee when to do so would serve the parties' and the estates' interests." *Id.*

15. It is axiomatic that a debtor in possession is a fiduciary. As a fiduciary, the debtor in possession does not act in its own interest but, like a trustee, must act in the best interest of the creditors of the estate. *Commodity Futures Trading Comm. v. Weintraub,* 47 U.S. 343, 354-55 (1985). In determining if a debtor in possession is complying with its fiduciary duties, courts should not disregard the protections provided by section 1104 in favor of overly protective attitudes toward debtors-in-possession. *See, In re V. Savino Oil & Heating Co., Inc.* 99 B.R. 518, 525 (Bankr. E.D.N.Y 1989).

16. The United States Trustee submits that the appointment of a Chapter 11 Trustee is in the interest of creditors and the estate. Creditors and the seniors deprived of their refunds—often their greatest, if not only, asset—deserve an independent party developing a reorganization strategy. Current and former residents of the Inn are together owed more than $28,000,000. An independent fiduciary, not a CRO, who is not bound by a duty of loyalty as is a debtor-in-possession, should preside over the Debtor's reorganization.

### C. The Appointment of a CRO is Not an Appropriate Remedy to Remedy the Debtor's Own Pre-Petition Misconduct

17. Either the Debtor is in possession and in control of its affairs, including the power to make business decisions, through its management, or it is not. "The latter situation contemplates and mandates the appointment of a trustee . . . When a trustee is appointed, control [over the debtor's affairs] is transferred to the trustee who assumes the decision-making function previously held by the debtor's management . . . ." *In re Casco Bay Lines, Inc.,* 17 B.R. 946, 951-52 (B.A.P. 1st Cir. 1982 (affirming order appointing an operating chapter 11 trustee).

7

18. The appointment of a CRO is not an appropriate remedy to the Debtor's own prepetition misconduct and mismanagement. Without really saying so, the CRO motion seeks to appoint the CRO as *de facto* chapter 11 trustee under 11 U.S.C. § 1104(a), while exempting him from the qualifications of serving. *See, e.g.,* 28 U.S.C. § 586(a)(1) (mandating that the United States Trustee supervise chapter 11 trustees). Here, it is, at best, unclear as to whom OnePoint reports.

19. Congress provided no other way to replace debtor's management's control of the case with an independent fiduciary other than the appointment of a trustee pursuant to 11 U.S.C. § 1104(a).

*[Remainder of Page Left Intentionally Blank]*

Requested Relief

For these reasons, the United States Trustee requests that the Court enter orders: i) directing the appointment of a Chapter 11 trustee; and ii) granting him such other and further legal and equitable relief to which he may be entitled.

Respectfully submitted,
WILLIAM K. HARRINGTON
United States Trustee, Region 1
/s/   Lisa D. Tingue
Lisa D. Tingue (BBO # 633275)
Trial Attorney
United States Department of Justice
Office of the United States Trustee
446 Main Street, 14th Floor
Worcester, MA 01608
Tel: (508) 793-0555
Fax: (508) 793-0558
Email: lisa.d.tingue@usdoj.gov

January 31, 2020

CERTIFICATE OF SERVICE

I, Lisa D. Tingue, hereby certify that on January 31, 2020, I caused a copy of the foregoing document to be served by email through the Court's ECF system to all entities and interested parties that are registered users thereof in this case.

/s/   Lisa D. Tingue
Lisa D. Tingue