UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Western Division)

| | |
|---|---|
| In re:<br><br>GKS CORPORATION<br><br>Debtor. | Chapter 11<br><br>Case No. 19-30998-EDK |

### NOTICE OF (A) INTENDED SALE OF SUBSTANTIALLY ALL ASSETS INCLUDING CERTAIN EXECUTORY CONTRACTS PURSUANT TO SECTIONS 363 AND 365 OF THE BANKRUPTCY CODE, FREE AND CLEAR OF ALL LIENS, CLAIMS, AND INTERESTS; (B) SALE PROCEDURES; (C) DEADLINES FOR SUBMITTING COUNTEROFFERS AND OBJECTIONS; AND (D) HEARING DATES

To Creditors and Parties in Interest:

**PLEASE TAKE NOTICE THAT**, pursuant to Sections 105, 363 and 365 of the Bankruptcy Code and Fed. R. Bankr. P. 2002, 6004 and 6006, and pursuant to the Debtor's Motion For Authority to Sell Substantially All Assets Including Certain Executory Contracts Pursuant to Sections 363 and 365 of the Bankruptcy Code, Free and Clear of All Liens, Claims, and Interests dated July 20, 2020 [Docket No. 119] (the "Sale Motion"), GKS Corporation (the "Debtor") intends to sell substantially all of the assets utilized by the Debtor in operating its business, including without limitation the real property and improvements known as The American Inn for Retirement Living located at One Sawmill Park, Southwick Massachusetts (the "Community"), (ii) personal property, including equipment, furniture and inventory used to operate the Community, (iii) certain executory contracts with third-party vendors (collectively, the "Assumed Contracts"), (iv) permits and licenses authorizing the provision of certain services to Community residents (to the extent transferable), and (v) and other miscellaneous, specified assets including the right to use the Debtor's trade names and other intellectual property (collectively, the "Assets"), to VS Southwick, LLC ("VS Southwick") or such other entity that submits the highest or otherwise best offer to acquire the Assets as determined through the sale process authorized by the Bankruptcy Court (the "Proposed Sale"). The Proposed Sale is to be made pursuant to the Amended and Restated Asset Purchase Agreement between the Debtor and VS Southwick attached as Exhibit A to the Sale Motion (the "APA"), including as it may be modified by agreement between the Debtor and the successful bidder for the Assets. By the APA, VS Southwick has agreed to pay $9,000,000 for the Assets, subject to certain adjustments customary for a sale of a business as a going concern, as set forth in the APA. In addition, pursuant to the APA, VS Southwick has agreed to provide $4,000,000 of rent abatement credits to the Community's current independent living residents as of the closing of the sale of the Assets, as more particularly described in the APA. These rent abatement credits will be implemented through VS Southwick's New Residency Agreements with Community residents, described below.

The Assets are subject to various liens and security interests, including those asserted by Westfield Bank (the Debtor's secured lender), the Town of Southwick, Massachusetts (for real estate taxes), and other secured creditors whose claims and liens are described in the Sale Motion. Pursuant to the APA and Section 363 of the Bankruptcy Code, the Assets will be sold free and clear of all such liens, claims, and interests (except for certain Permitted Exceptions as set forth in the APA), whether consensual or arising by operation of law including without limitation rights and interests arising under applicable state or federal law (including the Bankruptcy Code), with all such liens, claims, and interests to attach with equal effect and priority to the proceeds of sale. The Proposed Sale will also be free and clear of any rights of Community residents to remain in possession of their residences under applicable law, including without limitation Section 365(h) of the Bankruptcy Code, and Community residents' right to continue in residence at the Community will be governed by the New Residency Agreements between residents and VS Southwick to take effect upon the closing of the sale transaction, as described immediately below.

### *To Community Residents:*

VS Southwick is acquiring the Community as an ongoing business, and accordingly desires that existing residents remain residents of the Community after VS Southwick acquires it. To that end, VS Southwick has agreed, as noted above, to provide $4,000,000 of rent abatement credits to the Community's current independent living residents as of the closing of the sale of the Assets. In addition, VS Southwick has conditioned its purchase obligation on at least 95 percent of current Community residents (including all assisted living residents) entering into New Residency Agreements with VS Southwick. VS Southwick is in the process of developing its proposed form of New Residency Agreement. Once finalized, VS Southwick in consultation with the Debtor will make the proposed New Residency Agreement available for review by Community residents so that residents' views of the proposed New Residency Agreements can be considered during the sale process. The Debtor expects that competing bidders will develop their own forms of proposed New Residency Agreements, and will likewise seek to share such agreements with residents as part of the sale process. VS Southwick's proposed New Residency Agreements will contain certain required provisions set forth in attached Exhibit A (the "NRA Required Provisions"). In brief, the NRA Required Provisions provide that a resident's entry into a New Residency Agreement will be deemed to supersede and to terminate the resident's existing residency agreement. The purpose of the NRA Required Provisions is to ensure that: (i) the sale of the Assets will be free and clear of all preexisting claims and interests arising on account of the existing residency agreements and residents' current occupancy of the Community; (ii) VS Southwick's obligations to Community residents post-sale closing will be governed solely by the New Residency Agreements between VS Southwick and the residents, and not by any preexisting agreement or circumstance; (iii) residents will be relieved of any obligation to the Debtor under their existing residency agreements once VS Southwick takes control of the Community; and (iv) Community operations can transition seamlessly to new ownership and management. Competing bidders planning to enter into New Residency Agreements may elect to incorporate the NRA Required Provisions into their own proposed New Residency Agreements, and to solicit Community residents' views on any such competing New Residency Agreements.

*To Prospective Competing Bidders To Acquire The Assets:*

The Proposed Sale is to be governed by the procedures (the "Sale Procedures") approved by (and attached as Exhibit A to) the Order (A) Approving Procedures Governing Debtor's Proposed Sale of Substantially All Assets Including Certain Executory Contracts Pursuant to Sections 363 and 365 of the Bankruptcy Code, Free and Clear of All Liens, Claims, and Interests; (B) Approving Form and Manner of Notice of Sale; and (C) Granting Related Relief entered by the Bankruptcy Court on July 30, 2020 [Docket No. 142] (the "Sale Procedures Order"). **If you are interested in submitting a bid to purchase the Assets or any substantial portion thereof, please contact the Debtor's financial advisor, David Kliewer of Cushman &Wakefield, Telephone: (813) 349-8368, Email: david.kliewer@cushwake.com, in order (i) to obtain additional information about the Assets and to arrange for execution and delivery to the Debtor of a confidentiality agreement pursuant to which such additional information will be provided, and (ii) to obtain a copy of the Sale Procedures containing the terms and conditions governing the submissions of bids to purchase the Assets.** *Please do not contact the Debtor or its employees directly*. **Offers to purchase the Assets must comply with the Sale Procedures to be considered for acceptance by the Debtor and approval by the Bankruptcy Court. In accordance with the Sale Procedures, competing purchase offers must be submitted by no later than September 18, 2020 at 4:00 p.m. (prevailing Eastern Time).**

*To Non-Debtor Parties To Proposed Assumed Contracts:*

The Assets to be sold under the APA are expected to include the Debtor's rights under certain executory contracts, to be identified by VS Southwick pursuant to the APA, or by any other Winning Bidder (as defined in the Sale Procedures) under its Asset Purchase Agreement with the Debtor (the "Assumed Contracts"), which rights are to be transferred through the Debtor's assumption of the Assumed Contracts, and assignment of the Assumed Contracts to VS Southwick or such other Winning Bidder pursuant to Sections 363 and 365 of the Bankruptcy Code. The order of the Bankruptcy Court approving the sale of the Assets will also serve to bar any and all claims arising out of the Assumed Contracts (subject to the rights of non-Debtor parties to such agreements to cure of existing defaults and adequate assurance of future performance, in accordance with Section 365 of the Bankruptcy Code), and claims for successor liability. *The specific Assumed Contracts to be designated for assumption and assignment to the Winning Bidder upon the closing of the Proposed Sale will be determined by the Debtor and the Winning Bidder at or incident to the closing. To facilitate such assumption and assignment of the Assumed Contracts, the Debtor by the Sale Motion is seeking authority to assume and assign all executory contracts that prospective purchasers might reasonably be expected to have an interest in acquiring. The Debtor will notify all non-Debtor parties to such contracts of the potential assumption and assignment by a separate notice that will set forth procedures governing objections to the proposed assumption and assignment of the Assumed Contracts, including with respect to asserted cure payments or adequate assurance of future performance necessary to permit the proposed assumption and assignment.*

*To All Creditors And Parties In Interest:*

**ANY OBJECTIONS TO THE SALE MOTION** must be stated in writing and must state with particularity the grounds for the objection and why the sale of the Assets should not be authorized and must be filed with the Office of the Clerk, United States Bankruptcy Court, United States Courthouse, 300 State Street, Springfield, MA 01105, **no later than 4:00 p.m. (prevailing Eastern Time) on September 28, 2020** (the "Objection Deadline"), and also served so as to be received by the Objection Deadline by the following parties (the "Notice Parties"):

(a) attorneys for the Debtor, Casner & Edwards, LLP, 303 Congress Street, Boston, MA 02210, Attn: Michael J. Goldberg, E-mail: goldberg@casneredwards.com.

(b) attorneys for the Bank, Law Office of Joseph M. DiOrio, Inc., 144 Westminster Street, Suite 302, Providence, RI 02903, Attn: Joseph M. DiOrio, Esq., E-mail: jmdiorio@DiOrioLaw.com.

(c) attorneys for the Creditors' Committee, Weiner Law Firm, P.C., 1441 Main Street, Suite 610, Springfield, MA 01103, Attn: Gary M. Weiner, Esq., E-mail: GWeiner@Weinerlegal.com.

(d) the Office of the United States Trustee, 446 Main Street, 14th Floor, Worcester, MA 01608, Attn: Lisa D. Tingue, Esq., E-mail: Lisa.D.Tingue@usdoj.gov.

(e) attorneys for VS Southwick, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, 100 Light Street, 19th Floor, Baltimore, MD 21202, Attn: Kenneth Abel, Esq., E-mail: kabel@bakerdonelson.com and Jeffrey S. Greenberg, Esq., Email: jgreenberg@bakerdonelson.com.

Objections to the Sale Motion (or to assumption and assignment of any Assumed Contract) will be governed by Fed. R. Bankr. P. 9014.

**PLEASE TAKE FURTHER NOTICE THAT** a videoconference and/or telephonic hearing (the "Sale Hearing") will be held before the Honorable Elizabeth D. Katz, United States Bankruptcy Judge, United States Bankruptcy Court, United States Courthouse, 300 State Street, Springfield, MA 01105, **on September 30, 2020 at 10:00 a.m. (prevailing Eastern Time)** to consider (i) approval of the Sale Motion and the sale of the Assets to the Winning Bidder, and (ii) any objections to assumption and assignment of the Assumed Contracts. Instructions with respect to the participation in the Sale Hearing are set forth in greater detail in a separate Order of the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE THAT** any interested party requesting additional information with respect to the Proposed Sale or with respect to submitting a bid to purchase the Assets may (in addition to contacting Cushman & Wakefield as set forth above) contact counsel to the Debtor, Michael J. Goldberg, Casner & Edwards, LLP, 303 Congress

Street, Boston, MA 02210, Phone (617) 426-5900, email goldberg@casneredwards.com, provided that notwithstanding any information which may be provided, all entities submitting an offer shall be relying upon their own independent due diligence and analysis.

**PLEASE TAKE FURTHER NOTICE THAT** copies of the Sale Motion and the Sale Procedures Order may be obtained by making a written request to undersigned counsel to the Debtor.

Dated: July 31, 2020    GKS CORPORATION,

By its attorneys,

*/s/ A. Davis Whitesell*
Michael J. Goldberg (BBO #551869)
A. Davis Whitesell (BBO #551462)
David Koha (BBO #679689)
Casner & Edwards, LLP
303 Congress Street
Boston, MA  02210
Tel: 617-426-5900
Email: whitesell@casneredwards.com

## **Exhibit A to Sale Notice**

[VS Southwick New Residency Agreement—Required Provisions]

**[NRA Required Provisions]**

## RIDER TO [NEWCO RESIDENCY AGREEMENT]

This Rider to [Residency Agreement] (this "Rider") is incorporated into and made part of the foregoing [Newco Residency Agreement] between [Winning Bidder] [("Newco")] and _____ ("Resident") dated as of _____, 2020 (the "Agreement"). Newco and Resident are each a "Party" and together the "Parties". For the avoidance of doubt, references herein to the Agreement include this Rider.

## Recitals

A. Resident is a resident of The American Inn for Retirement Living located at One Sawmill Park, Southwick, Massachusetts (the "Community"). The Community is owned and operated by GKS Corporation ("GKS"). Resident's residency at the Community is governed by a certain Residency Agreement entered into by and between GKS and Resident (as amended, restated, supplemented or otherwise modified from time to time through the date hereof, the "GKS Residency Agreement"). As of the date of the Agreement, Resident occupies the independent or assisted living unit described in the GKS Residency Agreement (the "Unit").

B. On December 26, 2019, GKS filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), commencing its case pending in in the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court") docketed under Case No. 19-30998-EDK.

C. On July \_\_\_, 2020, GKS filed with the Bankruptcy Court a motion pursuant to Section 363 of the Bankruptcy Code seeking authority to sell substantially all of GKS's assets constituting, and used in the operation of, the Community, including the Unit (the "Proposed Sale"). The Proposed Sale is to be made free and clear of all interests of non-Debtor entities in the Debtor's assets as permitted by Section 363 of the Bankruptcy Code.

D. By order entered September \_\_\_, 2020 (the "Sale Order"), the Bankruptcy Court approved the Proposed Sale and approved Newco as the successful bidder to acquire the Debtor's assets constituting, and used in the operation of, the Community, including the Unit. The sale to Newco is contingent upon, among other things, a minimum percentage of Community residents entering into new residency agreements with Newco ("New Residency Agreements"). These New Residency Agreements supersede GKS's existing residency agreements with Community residents, including the GKS Residency Agreement, effective upon the closing of the sale of the Community to Newco (the "Sale Closing").

E. To promote the sale of the Community, the satisfaction of the condition that a minimum percentage of Community residents enter into New Residency Agreements with Newco, and the assurance to Resident of continued occupancy of the Unit on mutually acceptable terms and conditions after the Sale Closing, the Parties have entered into the Agreement, including this Rider.

## Agreement

NOW, THEREFORE, in consideration of the premises and of the mutual covenants contained in the Agreement (including this Rider), and for other good and valuable consideration, the receipt, adequacy and legal sufficiency of which are hereby acknowledged, the Parties agree that the Agreement includes and incorporates the following provisions:

1. **Effective Date**. The Agreement shall become effective upon the Sale Closing (the "Effective Date"). Pending the occurrence of the Effective Date, the Agreement shall nevertheless constitute the Parties' binding agreement that the Agreement shall take effect as of the Effective Date. If the Effective Date does not occur by December 31, 2020 (the "Effective Date Deadline"), then the Agreement will automatically terminate unless the Parties agree in writing to extend the Effective Date Deadline.

2. **Resident's Consent to Sale Free and Clear**. Resident acknowledges and agrees that Resident's entry into the Agreement constitutes Resident's consent to GKS's sale of the Community free and clear of any interest that Resident may have in the Community or the Unit, including any right to possession or occupancy of the Unit or residency at the Community under the GKS Residency Agreement, or applicable state or federal law (including the Bankruptcy Code). Resident acknowledges and agrees that, on and after the Effective Date, Resident's right to possession and occupancy of the Unit and residency at the Community is governed by the Agreement, and Resident waives any right to assert a right of occupancy of the Unit under the GKS Residency Agreement, or under applicable state or federal law (including the Bankruptcy Code) on account of Resident's occupancy of the Unit prior to the Effective Date.

3. **Superseding Agreement; Resident's Claims Against GKS**. Upon the Effective Date, the Agreement supersedes the GKS Residency Agreement, and the GKS Residency Agreement is deemed terminated as of the Effective Date. Resident shall look solely to GKS and its bankruptcy estate for satisfaction of any and all claims of Resident arising under the GKS Residency Agreement or with respect to the relationship between GKS and Resident ("Resident Claims"). Resident shall be entitled to assert its Resident Claims against GKS and its bankruptcy estate; however, any such Resident Claims shall not give rise to any right of setoff against, or any other means of satisfying, Resident's obligations to Newco, including any of Resident's obligations to Newco under the Agreement.

4. **Resident's Waiver and Release of Newco**. Resident (i) waives any and all Resident Claims as claims against Newco or any of Newco's officers, directors, managers, employees, agents, attorneys, affiliates, and representatives and (ii) releases Newco, and Newco's officers, directors, managers, employees, agents, attorneys, affiliates, and representatives, from any and all Resident Claims. This waiver and release do not release Newco from its obligations to Resident under the Agreement.

2